UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL, AND INDUSTRY FUND; THE TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND; THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION; and THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,<br><br>Petitioners,<br><br>– against –<br><br>WIN BELLEVILLE, LLC a/k/a WIN DEVELOPMENT INC.,<br><br>Respondents. | **OPINION AND ORDER**<br><br>18 Civ. 5376 (ER) |

Ramos, D.J.:

Two union benefit funds, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational, and Industry Fund (the "ERISA Funds") and the Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"), along with the associated labor-management organizations, the New York City and Vicinity Carpenters Labor-Management Corporation and the New York City District Council of Carpenters, a union, petition the Court to confirm an arbitration award against Win Belleville, LLC a/k/a Win Development Inc, invoking the Court's jurisdiction under 29 U.S.C. § 185. For the reasons stated below, the petitioners' motion is GRANTED.

I.  BACKGROUND

The petitioners are all labor-related organizations that function for the benefit of carpenters in the New York City area. The ERISA Funds are trustees of several labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, based in New York City. Pet. to Confirm Arbitration Award ("Pet.") ¶ 4, Doc. 1. The Charity Fund is a 501(c)(3) charitable organization based in New York City. *Id.* ¶ 5. The Labor-Management Corporation and the Council of Carpenters are labor-management organizations based in New York, as well. *Id.* ¶¶ 6, 7.

The respondent, Win Belleville, is a New Jersey limited liability corporation that has employed carpenters affiliated with the petitioners. *Id.* ¶ 8. Its principal place of business is in Belleaire Beach, Florida. *Id.*

In June 2017, Win Belleville recognized the Council of Carpenters as the exclusive bargaining agent for carpenters associated with the construction of a Walgreens in Belleville, New Jersey. *Id.* ¶ 9. The agreement between Win Belleville and the Council of Carpenters includes a requirement that Win Belleville remit contributions to both the ERISA and Charity Funds for each hour worked by covered employees. *Id.* ¶ 12. It also includes requirements concerning the inspection of Win Belleville's records, and it prescribes specific procedures for collecting any delinquent fees owed to the Funds. *Id.* ¶¶ 13, 14.

The agreement includes two arbitration provisions, as well. The first is paragraph 3 of the project agreement, which indicates that Win Belleville "agrees to arbitrate any and all disputes arising out of the attached Agreement as provided in the attached Agreement, regardless of termination of this project." Pet. Ex. A. The second is article XV, section 7 of an attached collective bargaining agreement, which allows that any dispute "concerning any claim arising

2

from payments to the Fund of principal and/or interest which is allegedly due" may be heard before an arbitrator. Pet. Ex. C. The collective bargaining agreement also provides for the following specified damages:

> (1) the unpaid contributions; plus
> (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus
> (3) an amount equal to the greater of —
>     (a) the amount of the interest charges on the unpaid contributions as determined in (2) above, or
>     (b) liquidated damages of 20% of the amount of the unpaid contribtoins; plus
> (4) reasonable attorney's fees and costs of the action; and
> (5) such other legal or equitable relief as the court deems appropriate.

*Id.* art. XV § 6(a).

In late 2017 or early 2018, the petitioners audited Win Belleville's records and determined that Win Belleville had failed to make the proper payments to the Funds between June and September 2017. Pet. ¶ 18. The petitioners then initiated arbitration proceedings before Roger Maher, one of the arbitrators identified in article XV, section 7 of the collective bargaining agreement. *Id.* ¶ 20. The arbitrator gave Win Belleville notice of an arbitration hearing in Manhattan on May 9, 2018 via regular and certified mail. *Id.*

Win Belleville did not appear at the arbitration hearing, and the arbitrator found it to be in default. *Id.* Ex. F. At the hearing, the petitioners submitted the collective bargaining agreement and presented testimony from their auditors, which established that Win Belleville was delinquent in its payments to the Funds. *Id.* at 2. Those auditors described their accounting method and the way in which they computed the delinquency. *Id.* The petitioners also presented testimony establishing the amount of damages they were owed under the collective bargaining agreement. *Id.*

3

On May 10, 2018, the arbitrator awarded the following damages to the petitioners per the collective bargaining agreement:

| | |
|---|---:|
| Principal | $ 28,333.80 |
| Total Interest | $ 956.98 |
| Liquidated Damages | $ 5,666.76 |
| Late Payment Interest | $ 25.03 |
| Promo Fund | $ 37.77 |
| Court Costs | $ 400.00 |
| Attorney's Fee | $ 1,500.00 |
| Arbitrator's Fee | $ 500.00 |
| **TOTAL** | **$ 37,420.34** |

*Id.* at 3. The arbitrator ordered that interest was to accrue at 5.75% from the date of the award.

Win Belleville has not paid any of the award, nor has it moved to vacate or modify the award. Pet. ¶¶ 24, 25. Accordingly, the petitioners asked this Court in June 2018 to confirm the arbitrator's award and enter judgment in their favor for the amount awarded, plus interest and attorneys' fees. Pet. at 7. Although Win Belleville was served in this action, it has not made an appearance before this Court. The Court held a hearing on September 14, 2018 to show cause for why the petitioner's motion should not be treated as an unopposed motion for summary judgment. Win Belleville did not appear at that hearing and the Court thus converted the petition into an unopposed motion for summary judgment. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109–10 (2d Cir. 2006) ("[G]enerally a district court should treat an unanswered . . . petition to confirm/vacate as an unopposed motion for summary judgment.").

## II. LEGAL STANDARD

### A. Standard for Confirming Arbitrations

Confirmation of an arbitral award normally takes the form of a summary proceeding that converts a final arbitration award into a judgment of the court. *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006). The court is required to grant the award unless it is

4

vacated, modified, or corrected. *Id.* (quoting 9 U.S.C. § 9). An application for a judicial decree confirming an award receives "streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

In order to promote the goals of arbitration, which consist of "settling disputes efficiently and avoiding long and expensive litigation," arbitration awards "are subject to very limited review." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (internal punctuation and quotation marks omitted) (quoting *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir. 1993)). It is not necessary that the arbitrator explain the rationale for the award; the award "should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted) (quoting *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). In short, as long as there is "a barely colorable justification for the outcome reached," a court should enforce an arbitration award — even if it disagrees with it on the merits. *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (internal citation and quotation marks omitted).

### B. Summary Judgment Standard

An unanswered petition to confirm an arbitration award is to be treated "as an unopposed motion for summary judgment." *D.H. Blair & Co.,* 462 F.3d at 110; *see also Trs. for The Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Earth Constr. Corp.*, No. 15 Civ. 3967 (RA), 2016 WL 1064625, at *3 (S.D.N.Y. Mar. 15, 2016) (internal quotation and alterations omitted) ("A district court should treat an unanswered petition to confirm or vacate as an unopposed motion for summary judgment and base its judgment on

the record."). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*

Even if a motion for summary judgment is unopposed, courts are required to "review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). "[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

## III. DISCUSSION

### A. Jurisdiction

The Court must first begin by assuring itself of its jurisdiction. *See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant . . . ."). The Court ordered the petitioners on October 18, 2019 to show cause why the petition should not be dismissed due to a lack of personal jurisdiction over Win Belleville. Doc. 17. They filed a memorandum in response on November 1, 2019. Doc. 20. For the reasons set forth below, the Court is convinced that it has personal jurisdiction over Win Belleville.

"Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k). In New York, this determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). The Court must first determine whether personal jurisdiction is appropriate pursuant to the state's general jurisdiction statute, C.P.L.R. § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302.[1] If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

---

[1] C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . .;" (3) "commits a tortious act without the state causing injury to person or property within the state . . . ;" or (4) "owns, uses or possesses any real property situated within the state."

7

The Court finds that Win Belleville is within the reach of C.P.L.R. § 302 and that the exercise of personal jurisdiction is reasonable under the U.S. Constitution.

First, the petitioners properly served Win Belleville via hand delivery of a summons on Win Belleville's registered agent. Aff. of Service, Doc. 8.

Second, Win Belleville purposefully availed itself of the privileges of New York law, even though it is a non-domicile. *See Chloe*, 616 F.3d at 169. In particular, Win Belleville has a contractual relationship with the petitioners, all New York entities, and it sent payments into New York pursuant to that contract. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (listing factors to be considered in determining personal jurisdiction over a non-domiciliary). This dispute arises from that contractual relationship and Win Belleville's failure to fully make its payments into New York. *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012). For these same reasons, the Court finds that the exercise of personal jurisdiction comports with due process. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).

Furthermore, Win Belleville has likely consented to this Court's jurisdiction through its agreement to a forum-selection clause allowing for awards to be entered in New York state court, which is itself consent to the jurisdiction of the New York state courts. Pet. Ex. C., art. XII § 2 ("The decision of the arbitrator shall be final and binding . . . and may be entered as a final decree or judgment in the Supreme Court of the State of New York or in a court of appropriate jurisdiction . . . .").

For these reasons, this Court may exercise personal jurisdiction over Win Belleville and proceed to the merits of this petition.

### B. Confirmation of the Arbitration Award

The Court has conducted a limited review of the arbitration agreement entered into by the parties and the ensuing arbitration award. The agreement between the parties required them "to arbitrate any and all disputes arising out of the [collective bargaining agreement] as provided in the [collective bargaining agreement], regardless of the termination of this project." Pet. Ex. A ¶ 3. The collective bargaining agreement specified that any arbitration was to take place before one of three arbitrators, one of whom was the arbitrator assigned here, Maher. Pet. Ex. C art. XIII § 2. The agreement further states:

> The arbitrator shall have the right to conduct an ex-parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision based on the testimony before him at such hearing. The decision of the arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgment in the Supreme Court of the State of New York or in a court of appropriate jurisdiction in any state where such decision shall be rendered.

*Id.*

After providing notice via certified mail to Win Belleville, the arbitrator found that Win Belleville was in default. Despite the default, the arbitrator heard evidence from the petitioners detailing the operative agreement, the deficiencies in Win Belleville's records, and the calculations of damages. There is no indication that this decision was made arbitrarily, that it exceeded the arbitrator's jurisdiction under the agreement, or that it was contrary to law. *See Trs. of New York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party.").

9

Accordingly, the Court finds that based on the record provided, together with the appropriate narrow level of review, there is no disputed material issue of fact and the arbitration award should be CONFIRMED. *See Landy*, 954 F.2d at 797 ("[A]n arbitration award should be enforced . . . if there is 'a barely colorable justification for the outcome reached.'" (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978))).

### C. Attorney's Fees, Costs, and Post-Judgment Interest

The petitioners also seek to recover an award of attorney's fees and costs for the instant motion to confirm, as well as post-judgment interest.

The Court agrees that the award of attorney's fees in connection with this motion is merited. "[C]ourts have routinely awarded attorney[']s fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Trs. of New York City Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting Abond*olo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)) (collecting cases). Win Belleville did not abide by the arbitration award and failed to timely participate in this action. The Court has reviewed the records supporting the 2.1 hours of attorney work at a rate of $275.00 per hour and the 0.2 hours of attorney work at a rate of $70.00 per hour; it finds those fees reasonable. It finds the $75 in costs incurred for this action reasonable, as well.

And the Court grants post-judgment interest on the full judgment amount pursuant to 28 U.S.C. § 1961(a). *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.").

## IV. CONCLUSION

For the reasons stated above, petitioners' motion is GRANTED. The arbitration award is confirmed, and the Clerk of the Court is directed to enter judgment in favor of the petitioners in the amount of $37,420.34 against Win Belleville, LLC d/b/a Win Development Inc. plus interest at a rate of 5.75% per annum accruing from May 10, 2018 until the date of entry of judgment. The Clerk is also directed to add $647.50 in attorneys' fees and $75 in costs to that amount. This judgment shall accrue post-judgment interest as mandated in 28 U.S.C. § 1961. The Clerk of the Court is respectfully directed to close the case.

It is SO ORDERED.

Dated: November 12, 2019
New York, New York

_____
Edgardo Ramos, U.S.D.J.